Filed 3/23/23  P. v. Cole CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B316819 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA492587) |
| v. | |
| GERALD COLE, | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Los Angeles County. Deborah S. Brazil, Judge.  Affirmed.

Robert L. Hernandez under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Susan S. Pithey, Assistant Attorneys General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General for Plaintiff and Respondent.

_____

A jury convicted Appellant Gerald Cole of first degree residential burglary (Pen. Code, § 459; count 1),[1] criminal threats (§ 422, subd. (a); count 2), and contempt of court (§ 166, subd. (c)(1); count 3). The trial court sentenced Appellant to the upper term of six years on count 1, and eight months (one-third the middle term) on count 2. The court imposed a concurrent one-year term on count 3. On appeal, Appellant argues that he was entitled to a jury instruction of the lesser included offense of attempted criminal threat. Appellant further argues that the case must be remanded for resentencing due to a change in the law governing determinate sentencing. We affirm both the conviction and sentence.

## BACKGROUND

### A. Prior Incidents of Domestic Violence Between Appellant and Fae

Appellant and his wife Fae A. were married for approximately eight years and had three children. Over that period of time, there were several instances of domestic violence between them. The first occurred about a month after they met, where Appellant slammed Fae into a bed, choked her, and punched her in the face. Fae stayed with Appellant after that because Appellant apologized to her.

A few years later into their marriage, in 2014, another domestic violence incident took place after they had both consumed alcohol at a family birthday party. Fae testified that Appellant was calling her offensive names and then he struck her

---

[1] Unless otherwise stated, all further statutory references are to the Penal Code.

2

in the chest, causing her to fall.  When Fae got up, she began hitting Appellant, and they then proceeded to hit each other.  Fae ran outside, but the fighting continued.  The fighting stopped when the neighbors came out.  Appellant denies that he hit or pushed Fae that day.

On New Year's Day 2020, Appellant and Fae were at a bus stop and began arguing.  Appellant called Fae a "bitch" and "whore" in front of their children.  Appellant believed that Fae had been cheating on him with another man.  As Appellant moved closer and closer to Fae, he pushed her in the head.  Fae then hit him, and they both started fighting.  Eventually, someone separated them, and the fighting stopped.  Fae had some scratches on her face, and Appellant was bleeding from his mouth.  Appellant denied striking Fae during this incident and said she was the sole aggressor.  Fae flagged down a passing police officer.  After the police interviewed Appellant and Fae, the police officer decided to arrest Fae, but no charges were pressed.

Appellant and Fae separated after the bus stop incident. Sometime in March 2020, they resumed their relationship but did not live together.

Sometime in July 2020, Appellant was living with his brother when another violent incident took place between Appellant and Fae.  Appellant, who had been drinking, told Fae he wanted nothing to do with her and told her to leave.  When Fae tried to leave, Appellant prevented her from taking any belongings that he had personally purchased.  Appellant began kicking Fae and grabbed onto her bag as she attempted to run out into the street.  Once outside, Appellant struck Fae, knocking her to the ground.  He continued punching her after she was down for several more minutes.

3

Sometime after this incident, Appellant was served with a protective order requiring him to stay away from Fae. By November 2020, Fae ended her relationship with Appellant.

**B.      January 11, 2021 Incidents at Issue in This Case**

On January 10, 2021, Appellant called Fae asking to sleep with her. When Fae said "No," Appellant became angry and threatened to kill Fae. At the time, Fae did not take the threat seriously and hung up the phone.

After that, Appellant continued to call back, asking to get back together with Fae. Each time, she told him "No." Finally, Fae stopped answering the phone.

The next day, Fae noticed that she had tens of missed calls and a voice message from Appellant. The voice message said, "Fae, man, if I can't have you . . . ain't nobody gonna have you, Fae." After hearing the voice message, Fae was afraid because she thought maybe Appellant was serious about killing her. However, she did not call the police at that time.

Later that afternoon, Fae heard someone trying to break in through the window in her apartment. Fae ran outside and went to the next-door neighbor's house. Fae called 911 and said she did not see who broke in but assumed it might be a male. Fae did not tell the 911 operator that she thought it might have been Appellant trying to break in. At trial, Fae testified that because of Appellant's prior threats, she feared it was Appellant breaking in.

When the police arrived, one officer saw a man exiting a broken window of the building. The officer told the man to stop, but the man ran toward the back of the building. Another officer went to the rear of the building and saw Appellant on the

4

opposite side of a five-foot wall.  Appellant was then arrested. During trial, Fae testified that she was still afraid of Appellant.

### C.    Relevant Procedural History

Appellant was charged with three crimes.  In count 1, Appellant was charged with first degree residential burglary with a person present (§ 459), a serious and violent felony within the meanings of sections 1192.7, subdivision (c), and 667.5, subdivision (c).  In count 2, Appellant was charged with making a criminal threat (§ 422, subd. (a)).  Finally, in count 3, Appellant was charged with misdemeanor contempt of court (§ 166, subd. (c)(1)).  On November 10, 2021, a jury convicted Appellant of all three charged crimes.

Appellant was sentenced on November 18, 2021.  The court sentenced Appellant to a total of six years and eight months consisting of:  the upper term of six years for count 1; eight months (one-third the midterm of two years) on count 2, to run consecutively to count 1; and 364 days on count 3, to run concurrent with count 1.  Appellant received credit for 235 days (204 actual plus 15 percent conduct credit).

Appellant timely appealed.

## DISCUSSION

## I.    The Trial Court Had a Sua Sponte Duty to Instruct on Lesser Included Offenses and Defense Counsel Did Not Invite Any Error

Because an attempted criminal threat is a lesser included offense of a criminal threat (See *People v. Toledo* (2001) 26 Cal.4th 221, 230–232 (*Toledo*); *In re Sylvester C.* (2006) 137 Cal.App.4th 601, 607), the trial court had a duty to instruct the jury sua sponte on the lesser included offense of attempted criminal threats if there was substantial evidence from which a

jury could reasonably conclude the defendant committed the lesser, uncharged offense, but not the greater. (See *People v. Brothers* (2015) 236 Cal.App.4th 24, 29; *People v. Birks* (1998) 19 Cal.4th 108, 118 ["even absent a request, and even over the parties' objections, the trial court must instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser"]; see also *People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*) [trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence].) Substantial evidence is evidence that a reasonable jury could find persuasive. (*People v. Williams* (2015) 61 Cal.4th 1244, 1263.)

Further, the invited error doctrine does not apply here when there is no evidence that defense counsel made a "tactical decision to force the jury to an all-or-nothing choice." (*People v. Walker* (2015) 237 Cal.App.4th 111, 118 (*Walker*).) "The trial court's duty to fully and correctly instruct the jury on the basic principles of law relevant to the issues raised by the evidence in a criminal case is so important that it cannot be nullified by defense counsel's negligent or mistaken failure to object to an erroneous instruction or the failure to request an appropriate instruction." (*People v. Avalos* (1984) 37 Cal.3d 216, 229.) An express tactical objection is required before a failure to instruct on a lesser included offense may be found to have been "invited." (*People v. Wickersham* (1982) 32 Cal.3d 307, 335, disapproved on other grounds by *People v. Barton* (1995) 12 Cal.4th 186, 201.)

Here, the record is silent as to whether defense counsel thought about an attempted criminal threat instruction at all, let alone made a tactical choice about whether to request it. (See

6

*Walker, supra,* 237 Cal.App.4th at p. 118.) When the court said it did not believe there were any lesser included offenses, defense counsel only addressed whether an attempted burglary instruction should be given: "No, it's up to the jury to decide what they decide was his reason for going in. So . . . I am not asking for a lesser." Accordingly, we find no invited error.

On appeal, we review the trial court's failure to instruct on a lesser included offense de novo, considering the evidence in the light most favorable to the defendant. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.) The erroneous failure to instruct sua sponte on a lesser included offense in a noncapital case is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome. In other words, we apply the *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*) standard of prejudice. (*Breverman*, *supra*, 19 Cal.4th at p. 165.)

## II. Even Assuming the Trial Court Failed to Instruct on Attempted Criminal Threat, Any Error Was Harmless

"In order to prove a violation of section 422, the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person'; (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out'; (3) that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat'; (4) that the threat actually caused the person threatened 'to be in sustained fear for his or

7

her own safety or for his or her immediate family's safety'; and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*Toledo, supra*, 26 Cal.4th at pp. 227–228; see also § 422.)

Sustained fear, the fourth element of a criminal threat, "requires proof of a mental element in the victim" (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 (*Allen*)) and "has a subjective and an objective component." (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140.) "A victim must actually be in sustained fear, and the sustained fear must also be reasonable under the circumstances." (*Ibid.*) " 'Sustained fear' refers to a state of mind," and "describes the emotion the victim experiences." (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349 (*Fierro*).) Within the meaning of section 422, "sustained" means "a period of time that extends beyond what is momentary, fleeting, or transitory." (*Allen*, at p. 1156.) However, no set time frame exists for a victim to be in a statutorily sufficient state of "sustained fear." (*Id.* at p. 1156, fn. 6.) For example, case law qualifies a victim's fear as sufficiently "sustained" within the meaning of section 422 when the fear lasts anywhere between one and 15 minutes. (See *Fierro*, at p. 1349 [one minute sufficient to qualify as sustained fear when a defendant threatens to kill a victim with a visible weapon]; *Allen*, at p. 1156 [15 minutes sufficient to qualify as sustained fear].) In addition, a "victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear." (*Allen*, at p. 1156; but see *In re Ricky T.*, at p. 1138 [a victim's lack of history with defendant paired with victim's one-day delay in calling police evidenced a fear that was merely fleeting].)

An attempted criminal threat is a lesser included crime of a criminal threat. (*People v. Chandler* (2014) 60 Cal.4th 508, 514 (*Chandler*); *Toledo, supra*, 26 Cal.4th at p. 226.) " '[I]f a defendant . . . acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat.' " (*Chandler*, at p. 515.)

We need not reach whether there was substantial evidence to warrant the lesser included instruction of attempted criminal threat because we conclude any error was harmless. "[E]vidence sufficient to warrant an instruction on a lesser included offense does not necessarily amount to evidence sufficient to create a reasonable probability of a different outcome had the instruction been given." (*People v. Banks* (2014) 59 Cal.4th 1113, 1161, disapproved on another point in *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3.) We agree with the Attorney General that after examining the entire record, we cannot conclude that there is a reasonable probability that the jury would have found Appellant guilty of attempted criminal threat, rather than the completed crime of criminal threat. (*Breverman, supra*, 19 Cal.4th at p. 165.)

"[I]n a noncapital case, error in failing sua sponte to instruct . . . on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under *Watson*." (*Breverman, supra*, 19 Cal.4th at p. 178.) "Such posttrial review focuses not on what

9

a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*Id.* at p. 177.) " ' "The Supreme Court [in *Watson*] has emphasized 'that a "probability" in this context does not mean more likely than not, but merely a *reasonable chance,* more than an *abstract possibility*.' " ' " (*People v. Brown* (2016) 245 Cal.App.4th 140, 155.) " '[U]nder *Watson*, a defendant must show it is reasonably probable a more favorable result would have been obtained absent the error.' " (*People v. Beltran* (2013) 56 Cal.4th 935, 955.)

To find Appellant guilty of the lesser offense of attempted criminal threat based on the theory that Fae did not experience sustained fear, the jury would have had to reach a set of conclusions about the evidence that, taken together, do not appear reasonably probable. "[W]hen a defendant is charged with attempted criminal threat, the jury must be instructed that the offense requires not only that the defendant have an intent to threaten but also that the intended threat be sufficient under the circumstances to cause a reasonable person to be in sustained fear." (*Chandler, supra*, 60 Cal.4th at p. 525.) The jury would have had to conclude that, even given Appellant's abusive history with Fae, Fae did not in fact experience sustained fear as a result of the intended threat, despite her testimony that she felt afraid when she received the second threat. (See *Allen*, *supra*, 33 Cal.App.4th at p. 1156 ["victim's knowledge of defendant's prior

conduct is relevant in establishing that the victim was in a state of sustained fear"].) In addition, Fae testified that she fled from her home later that same day when she heard noises at her window consistent with a break-in because she feared that her husband was attempting to get into her home. Fae then called 911 from her neighbor's home. (See *Fierro, supra,* 180 Cal.App.4th a pp. 1345–1346 [holding that person who drove away and called 911 after defendant exposed a weapon was in sustained fear].) Further, Fae's fear was borne out as her husband did break into her home that afternoon. Finally, Fae further testified that her fear persisted to the time of trial.

The jury resolved the factual question regarding Fae's credibility against Appellant in convicting him of the criminal threats, necessarily rejecting Appellant's version of the events. (See *People v. Turner* (1990) 50 Cal.3d 668, 690 ["erroneous failure to instruct on a lesser included offense is not prejudicial if 'it is possible to determine that . . . the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions' "].) Having credited Fae's testimony about the underlying events, it is not reasonably probable that the jury would then conclude Fae was lying when she testified that she was afraid after hearing the voice message, and testified that she feared it might be her husband who was coming through the window of her apartment. As such, Appellant's contention that her fear of Appellant did not continue when she heard the break-in is unavailing.

Accordingly, any error was harmless.

## III.  Appellant is Not Entitled to be Resentenced

Appellant contends a remand for resentencing is necessary due to the enactment of Senate Bill No. 567 (2021–2022 Reg.

Sess.) (SB 567), which took effect on January 1, 2022, and amended the standards for imposing an upper-term sentence under section 1170, subdivision (b).  The Attorney General agrees this amendment applies retroactively to Appellant.  (See, e.g., *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109 (*Zabelle*) ["section 1170's current statutory language applies retroactively in all nonfinal cases"].)  The Attorney General, however, argues that because the trial court relied on Appellant's prior criminal history to impose the upper term, remand is not required.  We conclude a remand for resentencing is unnecessary.

"Senate Bill 567 amended section 1170, subdivision (b), to specify that, when a sentencing court chooses a term from a statutory triad, the chosen term shall not exceed the middle term, unless the facts supporting the aggravating circumstances are (1) established by the defendant's stipulation to them, (2) proven to a jury (or to a court, if jury is waived) beyond a reasonable doubt, or (3) based on prior convictions evidenced by a certified record of conviction.  (Stats. 2021, ch. 731, §§ 1.3, 3(c), adding Pen. Code, § 1170, subd. (b)(1)–(3), by amendment.)"  (*People v. Jones* (2022) 79 Cal.App.5th 37, 44–45.)

When imposing the upper term of six years on the count 1 burglary conviction, the trial court applied the pre-Senate Bill 567 version of section 1170, subdivision (b).  In selecting the upper term, the court found several aggravating factors set forth in California Rules of Court, rule 4.421[2] applied and found no mitigating factors.  The court first considered factors relating to the crime as set forth in rule 4.421(a) and (c):  Appellant made

---

[2]     All further rule references are to the California Rules of Court.

12

death threats to the victim; the police recovered a box cutter from Appellant's clothing when he was arrested; Fae was particularly vulnerable with young children and there was an approximate age difference of 30 years; there were numerous prior acts of domestic violence perpetrated by Appellant on Fae, but noted that "in fairness, the victim testified, as did the defendant, concerning an act of domestic violence that the victim perpetrated on the defendant"; and the violence between them was escalating, as Appellant violated a restraining order by breaking into her home.

The court then found aggravating factors relating to Appellant set forth in rule 4.421(b) and again found no mitigating factors applied. The court stated that "defendant's prior conviction in Texas [subjects] him, according to the defendant, to many years in state prison if he were to violate parole" and Appellant had suffered other prior convictions; Appellant served prior prison time; Appellant was on parole at the time he committed the offenses in this case; and Appellant's prior performance on probation or parole was unsatisfactory "so the court does not believe that probation would be appropriate to protect the public, to protect the victim or to sufficiently address the conduct in this matter."

The Courts of Appeal are divided on the applicable standard for assessing prejudice in this situation and the issue is pending before our Supreme Court. (*People v. Lynch* (May 27, 2022, C094174) [nonpub. opn.], review granted Aug. 10, 2022, S274942.) The primary disagreement is between *People v. Flores* (2022) 75 Cal.App.5th 495 (*Flores*), a decision by Division Three of the First District Court of Appeal, and *People v. Lopez* (2022) 78 Cal.App.5th 459 (*Lopez*), a decision by Division

13

One of the Fourth District Court of Appeal. *Flores* concluded a remand for resentencing is unnecessary if the reviewing court can determine beyond a reasonable doubt that the jury would have found true at least one aggravating factor (*Flores*, at pp. 500–501), and *Lopez* concluded a remand is necessary unless the reviewing court can (1) determine beyond a reasonable doubt that the jury would have found true all the aggravating factors the trial court cited, or (2) conclude, "to the degree required by *People v. Watson* (1956) 46 Cal.2d 818, 836," that the trial court would have reached the same decision even if it knew it could not properly rely on all the factors it did (*Lopez*, at p. 467, fn. 11).

Division Two of the First District Court of Appeal has agreed with *Lopez* (*People v. Wandrey* (2022) 80 Cal.App.5th 962, 982, review granted Sept. 28, 2022, S275942), and Division Six of the Second District Court of Appeal has agreed with *Flores* (*People v. Salazar* (2022) 80 Cal.App.5th 453, 465, 458, 462, review granted Oct. 12, 2022, S275788). The Third District Court of Appeal and Fifth District Court of Appeal have articulated other standards. The Third District essentially agreed with *Lopez*, stating that "[its] approach and the *Lopez* court's approach are the same in terms of outcomes," but described the standard differently. (*Zabelle*, *supra*, 80 Cal.App.5th at p. 1113.) The Fifth District concluded that since the type of error at issue has both federal constitutional and state law dimensions, "the correct standard for harmless error lies between the standards articulated in *Flores* and *Lopez*," a standard we discuss below. (*People v. Dunn* (2022) 81 Cal.App.5th 394, 408–409 (*Dunn*), review granted Oct. 12, 2022, S275655.)

14

We agree with the majority of courts to address the issue that, contrary to *Flores*, "a reviewing court finding beyond a reasonable doubt that the jury would have found a single aggravating factor true beyond a reasonable doubt is insufficient to conclude that the error was harmless." (*Dunn, supra*, 81 Cal.App.5th at p. 408.)

*Dunn* described the standard for assessing prejudice as follows: "The reviewing court determines . . . beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt" and whether "there is a reasonable probability that the jury would not have found the remaining aggravating circumstance true beyond a reasonable doubt." (*Dunn, supra,* 81 Cal.App.5th at pp. 408–410.)

If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless. "If not, the reviewing court moves to the second step of *Lopez*, (2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer is no, the error was harmless. If the answer is yes, the reviewing court vacates the sentence and remands for resentencing . . . ." (*Dunn, supra*, 81 Cal.App.5th at p. 410.)

As to the crime-based aggravating factor in rule 4.421(a)(1), Appellant concedes on appeal that the crime committed by Appellant involving a threat of death is permissible because the jury convicted Appellant of both burglary and making a criminal threat. Because section 422 requires (1) that the defendant "willfully threaten[ed] to commit a crime which will result in

15

death or great bodily injury to another person," the underlying facts of this element were found true beyond a reasonable doubt by the jury. Thus, there was no error under this factor post-SB 567. (*Id.*, subd. (a).)

Further, Appellant's own admissions supported the court's consideration of two prior convictions. Appellant admitted during his testimony to his Texas felony conviction and his misdemeanor theft conviction. Appellant also concedes on appeal that the trial court properly considered Appellant's prior conviction in Texas. Thus, to the extent the trial court made its sentencing decision based on the aggravating circumstances set forth in rule 4.421(b), no error appears.

"Accordingly, we need not determine beyond a reasonable doubt whether the jury would have found any one aggravating circumstance true beyond a reasonable doubt." (*Dunn*, *supra*, 81 Cal.App.5th at p. 410.)

Because the remaining crime-based factors were neither established by stipulation nor submitted to a jury to find true beyond a reasonable doubt, "[w]e must next determine whether there is a reasonable probability that the jury would not have found the remaining aggravating circumstance true beyond a reasonable doubt." (*Dunn*, *supra*, 81 Cal.App.5th at p. 410.)

Appellant takes issue with the court's finding under rule 4.421(a)(2) that he was armed with or used a weapon at the time of the commission of the crime. However, Appellant admitted during his testimony that he was in possession of a box cutter and concedes on appeal that a box cutter can be used as a weapon. Appellant testified that he only had the box cutter to cut open "blunts" to insert marijuana into the tobacco before smoking. Even crediting Appellant's testimony that a box cutter

has other uses, it is a sharp blade that he had readily available to him.  In addition, he had the box cutter as he was breaking into Fae's home after making a death threat to her hours earlier.  Finally, the history of domestic abuse is further reason to conclude that he was armed given that he was carrying this blade.  Thus, it is not reasonably probable that the jury if asked, would not have found true beyond a reasonable doubt that defendant was armed with a weapon.

Under rule 4.421(a)(3), the court then found that "in this situation the victim was particularly vulnerable with young children that she was caring for."  We agree with Appellant that this conclusion is not supported by the evidence.  At the time of the burglary, Fae stated that she was home alone.  Indeed, at the time of the incident in this case, custody of Fae's children had been taken away from her.  The court also noted the 30-year age difference between Fae and Appellant.  But at the time of the trial, Fae was 34 years old.  Given that her relationship with Appellant lasted eight years, she was approximately 26 years old when she began her relationship with Appellant.  As such, Fae was not a child or underage.  "The record, [thus] does not reflect such a clear-cut instance of victim vulnerability that we confidently can conclude the jury would have made the same findings, as might be the case if, for example, the victim[] had been elderly, very young, or disabled, or otherwise obviously and indisputably vulnerable." (*People v. Sandoval* (2007) 41 Cal.4th 825, 842.)  It is therefore reasonably probable that the jury would not have found true beyond a reasonable doubt that Fae was particularly vulnerable.

Under rule 4.421(c), a court may consider "[a]ny other factors statutorily declared to be circumstances in aggravation or

17

which reasonably relate to the defendant or the circumstances under which the crime was committed." (*Ibid*.) The court considered the prior incidents of violence between Appellant and Fae. Appellant admitted in his testimony to physically or verbally abusing Fae on all but one occasion. There was also photographic evidence of Fae's injuries. Appellant also admitted to knowing Fae had a restraining order against him at the time of the burglary. Further, the jury likely took these prior incidents into consideration when it convicted Appellant of making a criminal threat as part of its analysis of whether Fae's fear was reasonable. (*In re Ricky T.*, *supra*, 87 Cal.App.4th at p. 1140 ["A victim must actually be in sustained fear, and the sustained fear must also be reasonable under the circumstances"].) As such, it is not reasonably probable that the jury would not have found true beyond a reasonable doubt these additional factors.

Lastly, we cannot conclude that there is a reasonable probability that the jury would have found facts underlying Appellant's probation and parole violations, as well as his additional convictions that he did not stipulate to, true beyond a reasonable doubt. Because a probation report is not a certified record of conviction, the facts underlying Appellant's convictions and probation violations needed to be submitted to a jury. (See *Dunn, supra,* 81 Cal.App.5th at p. 403 ["[T]he People are mistaken in their assertion that defendant's probation report is a certified record of conviction"].) The record is devoid of any other evidence as to these factors, aside from a probation report. (See *Zabelle*, *supra*, 80 Cal.App.5th at p. 1115, fn. 6 ["If the record is insufficient to support a trial court's findings about a defendant's criminal history, we will not presume the existence of extrarecord materials, however likely they are to exist, to address

18

this insufficiency"].)  Accordingly, it is reasonably probable that the jury would not have found true beyond a reasonable doubt the foregoing factors.

Because we cannot conclude that all the aggravating circumstances relied upon by the trial court "would have been proved to the respective standards," the second step in *Dunn* asks us to determine whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term.  (*Dunn, supra*, 81 Cal.App.5th at pp. 409–410.) Given that all the aggravating circumstances would have been proven or were stipulated by Appellant, except for some of his criminal history outlined above and whether Fae was particularly vulnerable, we hold that it is not reasonably probable that the trial court would have imposed a sentence other than the upper term.  As discussed above, the remaining permissible factors include:  that the crime involved a threat of death; Appellant was armed with a box cutter at the time of the commission of the crime; Appellant perpetrated numerous prior acts of domestic violence on Fae; at the time of the crimes at issue, Fae had a restraining order against Appellant; and Appellant had a prior felony conviction in Texas and a theft conviction in California. Accordingly, any error was harmless.

## DISPOSITION

Appellant's conviction and sentence are affirmed.


                                        VIRAMONTES, J.

We Concur:



GRIMES, Acting P. J.



WILEY, J.